Our fourth case for this morning is Reid v. Melvin, Mr. Platt. You have no opponent this morning, Mr. Platt, so you... Hopefully it won't stay that way for Mr. Reid. Yes. May it please the court, the district judge dismissed Mr. Reid's excessive force complaint because as the district court wrote, Mr. Reid did not allege an actionable injury when he was struck by keys. The screening order should be reversed for two reasons. First, the district court misapplied Rule 12b-6 and minimized the force that was alleged. And second, it simply misapplied the Eighth Amendment legal standard. It can't be the case that the Eighth Amendment permits a guard to slam an inmate's fingers while cursing and calling him the N-word when the inmate presents no legitimate institutional security threat. So first I'll discuss the facts. In the screening order, the judge wrote that Mr. Reid's hand was struck by keys. In fact, the complaint alleges a far more violent episode. Mr. Reid was locked inside of his cell as the correctional officer defendant Bellotto was distributing meals through the chuck holes to the inmates and when he approached Mr. Reid's cell, he gave Mr. Reid the wrong meal. Mr. Reid is entitled to a special diet for religious purposes. So the complaint, I'm looking at it, seems to say an officer marked Bellotto with his closed fist, keys in fists, start to hit my hand on the chuck hole door. So you've portrayed that as possibly the keys almost being a brass knuckle kind of thing around his fist. I think it could have been either that, Your Honor, or just gripping the heavy brass implements. If you've seen prison keys, they're large, heavy objects, so either the keys in the ring were wrapped around his hand or his fist was weighted. Either way, it converted a closed fist into a far more serious weapon in this case. And we don't know anything because this case is still at such an early stage, I take it about whether his finger really was broken or not. We know it was swollen. He says that in the complaint. That's right, Your Honor. There's no medical records attached to the complaint. I don't know if there's any requirement, but we believe that the evidence at trial will show that his finger was in fact broken. So getting back to the facts, Mr. Reed placed his hand on the chuck hole door to inform Officer Bellotto that he had received the wrong meal. Mr. Officer Bellotto did not attempt to de-escalate the situation verbally or simply fix his error by giving Mr. Reed the right meal. Instead, he immediately grabbed his keys and bashed Mr. Reed's fingers three to four times. The finger immediately began to swell and Mr. Reed experienced intense pain. So I take it another part of the scenario that you think, you know, reading the complaint in the light favorable to Mr. Reed, that this chuck hole door is relatively small and that Officer Bellotto is not under any personal risk from this hand. That's the way that we read the complaint at this stage of the litigation, Your Honor. It may come out later at evidence at summary judgment at trial that there was some institutional threat or threat to Officer Bellotto, but as alleged in the complaint, his hand was only resting on the chuck hole door and I think it's a permissible inference that the door is solid at this point. So following the beating, Mr. Reed asked for medical attention immediately to which Officer Bellotto replied, F you, and went on his way. And then applying that to the Eighth Amendment legal standard, this court has written that when there's no need for force, any force is per se excessive. We believe that rule applies and controls this case at this juncture and even if it doesn't, if there was some need for force, you would look at the Hudson v. McMillan factors laid out in that case and in others and you would look to the need for force, the amount of force, whether there were any attempts to de-escalate the situation verbally before the force was applied and the nature of the injury. And all those factors cut strongly in favor of Mr. Reed as well as the obvious facts such as the curses and the racial epithets which will obviously be relevant evidence under Rule 401 at trial of Officer Bellotto's mental state. We believe this is a pretty simple case for reversal at this stage of the litigation and if there are no further questions, I'll submit on the brief. I see none, so thank you very much. We will take this case under advisement.